THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOWHEAD OPERATIONS &
MAINTENANCE SOLUTIONS LLC,

                              Plaintiff,

        v.

ENDURANCE AMERICAN INSURANCE
CO, *et al.*,

                              Defendants.

CASE NO. C21-0909-JCC-JRC

ORDER

This matter comes before the Court on the parties' cross-objections (Dkt. Nos. 50, 55) to the report and recommendation ("R&R") of the Honorable J. Richard Creatura, U.S. Magistrate Judge. (Dkt. No. 49.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby SUSTAINS Defendants' second objection as to the definition of "charterer," SUSTAINS Plaintiff's objection as to liability "assumed" under an incidental contract, and otherwise OVERRULES their objections.

I.      **BACKGROUND**

        This is an insurance coverage case. Plaintiff Bowhead Operations & Maintenance Solutions LLC sues Defendants on various causes of action after they denied Plaintiff's insurance claim for $6.5 million in repair costs resulting from the grounding of a watercraft. (*See generally* Dkt. No. 1-2.)

ORDER
C21-0909-JCC-JRC
PAGE - 1

Plaintiff is one of several subsidiaries of Ukpeaġvik Iñupiat Corporation ("UIC"). (Dkt. No. 22-1 at 2–3.) Plaintiff entered a contract with the U.S. Navy (the "Navy Contract") that required Plaintiff to operate multiple vessels and provide related services at Joint Base Pearl Harbor-Hickam in Hawaii. (*See* Dkt. No. 31-4 at 3.) Among other things, Plaintiff was to use Navy vessels to retrieve torpedoes used in training exercises, transport munitions and personnel around the area, and support various training activities. (*See id.*)

While performing these services in July 2020, Plaintiff apparently ran the Naval vessel Multipurpose Craft 4 ("Craft") into a submerged reef, seriously damaging the Craft. (Dkt. No. 31-5 at 2, 5.) The Navy's investigation concluded human error was to blame. (*See id.*) Plaintiff alleges it will eventually incur $6.5 million in repair costs for the Craft. (*See* Dkt. No. 1-2 at 6.)

Defendants Endurance American Insurance Company and U.S. Specialty Insurance Co. insured UIC[1] under a Comprehensive Marine Liability Policy (the "Policy") in which Plaintiff and several other UIC subsidiaries were named assureds. (Dkt. Nos. 31-1 at 4, 31-3 at 2.) Plaintiff contends the Policy covers the funds it spent to repair the Craft. (*See generally* Dkt. No. 1-2.)

But perhaps surprisingly, the Policy expressly *excludes* coverage for "property damage arising out of the ownership, maintenance, operation, [or] use . . . of any watercraft owned or operated by or rented or loaned to any assured." (Dkt. No. 23-1 at 15.) And it expressly excludes "liability assumed by the assured under any contract . . . except an incidental contract." (*Id.*) But there is a "Contractual Liability Coverage" endorsement that broadens the definition of "incidental contract" to include virtually any course-of-business contract. (Dkt. No. 23-1 at 39.) Therefore, this definition paradoxically *broadens* coverage and thereby *avoids* the watercraft exclusion. (*See id.*) In other words, the Policy covers losses incurred due to "liability assumed by the assured under . . . an incidental contract." (Dkt. No. 23-1 at 15.) Plaintiff argues that its losses

---

[1] In truth, the policyholder is UIC Marine Services, LLC. (*See, e.g.*, Dkt. No. 23-1 at 20.) But the Court omits non-germane subtleties of UIC's corporate organization chart.

are covered because it "assumed" liability under the Navy Contract. (Dkt. No. 55 at 13.)

Plaintiff's other theory of coverage is the "Charterer's Legal Liability Endorsement" ("Charterer's Endorsement"), which provides as follows:

> Company agrees to indemnify the Insured . . . of all sums which the insured as charterer of vessels hereinafter described shall become obligated to pay as follows:
>
> This insurance covers the legal and/or contractual liability of the Assured as Charterer (other than Bareboat Charterer) in respect of the Vessel insured hereunder for any . . . loss or damage, resulting from any accident in which said vessel may be involved.

(Dkt. No. 23-1 at 57.)

Both sides moved for partial summary judgment asking the Court to adopt their respective interpretations of the "assumed liability" and Charterer's Endorsement clauses. (*See* Dkt. Nos. 28, 41.) Judge Creatura's R&R recommends denying both cross-motions as to the Charterer's Endorsement and recommends granting Defendants' motion as to the "assumed liability" provision. (*See generally* Dkt. No. 49.)

## II.   DISCUSSION

### A.   Legal Standard

The Court reviews *de novo* any part of the magistrate judge's report and recommendation that a party specifically objects to in writing. Fed. R. Civ. P. 72(b); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). "[T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views facts in the light most favorable to the nonmoving party and resolves ambiguity in that party's favor, but it must not make credibility determinations or weigh evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986); *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994). A fact is material if it "might affect the outcome of the suit," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

1   party." *Anderson*, 477 U.S. at 248.

2        The moving party has the initial burden to show the lack of a genuine issue for trial.

3   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that party succeeds, the burden shifts to

4   the nonmoving party to demonstrate there is an issue for trial. *See id.* at 323–24. If the movant

5   fails, the nonmovant need not present any evidence, even if it has the ultimate burden at trial. *See*

6   *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, *Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

7        On cross-motions for summary judgment, the Court evaluates each motion independently

8   giving the nonmovant in each instance the benefit of all reasonable inferences. *Lenz. v. Universal*

9   *Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016).

10       **B.      The R&R's Definition of "Charterer"**

11       Defendants' first objection is that the R&R erred by not adopting a specialized maritime

12  definition of "charter" to interpret the Charterer's Endorsement. (Dkt. No. 50 at 2–4.) It is not

13  clear what Defendants hope to achieve with this argument. They admit that "the parties do not

14  dispute what 'charter' or 'charterer' mean for purposes of the Policy," (Dkt. No. 50 at 5), and

15  their underlying summary judgment briefing acknowledges there is no material difference

16  between the plain ordinary meaning of "charter" and any specialized maritime meaning they say

17  it should have (Dkt. No. 43 at 17–18). Nor do Defendants ultimately challenge Judge Creatura's

18  application of Alaska law. (*See generally* Dkt. No. 50.) The Court thus OVERRULES

19  Defendants' first objection.

20       **C.      Whether Plaintiff was a "Charterer"**

21       Both parties' objections clarify that the real dispute is whether Plaintiff was a "charterer"

22  of the Craft (Dkt. No. 50 at 5), and more specifically whether (1) being a "charterer" means you

23  have to pay to use the chartered vessel, and (2) there was sufficient evidence that Plaintiff

24  reasonably expected it would be covered as a "charterer." (*See* Dkt. No. 55 at 7–10.)

25       Alaska courts interpreting an insurance contract look to (1) the relevant policy language,

26  (2) other provisions in the policy, (3) extrinsic evidence, and (4) precedent construing similar

terms. *Hahn v. GEICO Choice Ins. Co.*, 420 P.3d 1160, 1170–71 (Alaska 2018). Coverage is interpreted broadly and exclusions narrowly, and the overall policy is interpreted in accordance with the insured's reasonable expectations, even if the unambiguous policy text might negate those expectations. *Id.* (citations omitted). Courts will not, however, ignore or rewrite the plain terms of the policy. *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 6 (Alaska 2004). The Court reads terms according to their "ordinary and customary usage," *Hahn*, 420 P.3d at 1171, often referring to dictionaries to do so. *See Teel*, 100 P.3d at 5 (citing WEBSTER'S DICTIONARY); *Krossa v. All Alaskan Seafoods, Inc.*, 37 P.3d 411, 417 (Alaska 2001) (citing BLACK'S LAW DICTIONARY).

Plaintiff argues that, (1) because the parties agree "charter" means "to lease or hire a vessel," (2) because Black's Law Dictionary defines "hire" as "procur[ing] the temporary use of property," and (3) because Plaintiff procured use of the Craft in serving the Navy, therefore, (4) Plaintiff was a "charterer." (*See* Dkt. No. 53 at 3–5.) This is a tortured interpretation and strains the contractual language beyond its ordinary and customary usage. Black's indeed defines "charter" as "[t]he leasing or hiring of an airplane, ship, or other vessel." *See Charter*, BLACK'S LAW DICTIONARY (11th ed. 2019) (also: "to hire or rent for temporary use <charter a boat>"). But Plaintiff is hiding the ball on how Black's actually defines "hire," that is: "1. To engage the labor or services of another *for wages or other payment*. 2. To procure the temporary use of property, *usu. at a set price*." *Hire*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). Paying for services or the use of property is inherent in the definition of "hire." *See also Hire*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/hire (last visited July 13, 2022) ("[P]ayment for the temporary use of something"). Accordingly, the Court holds that the plain language of "charterer" requires payment for the temporary use of the vessel being chartered.

Plaintiff argues that, even if it did not pay cash to use the Craft, it "agreed to provide services to the Navy, in exchange for . . . charter of the [Craft]." (Dkt. No. 55 at 8.) This is transparently revisionist. Consideration is "the promised performance of one party agreed to be

exchanged for that of the other party." *Durkee v. Busk*, 355 P.2d 588, 591 (Alaska 1960).
Plaintiff did not promise to perform services to the Navy so it could operate the Navy's vessel;
rather, the Navy paid Plaintiff to operate the vessel for the Navy. (*See* Dkt. No. 21-1 at 2–4.)
Plaintiff no more chartered the Craft from the Navy "than a school bus driver 'hires' or 'charters'
a bus from the school district." (Dkt. No. 52 at 5.)

       The issue, then, is whether, despite the unambiguous meaning of "charterer," there is
sufficient evidence to warrant summary judgment about whether Plaintiff reasonably expected
coverage under the Charterer's Endorsement. There is—for Defendants.

       Plaintiff argues that a layperson would reasonably expect a policy called an "Ocean
Marine Insurance Policy" providing "Comprehensive Marine General Liability Coverage" would
cover damage to the Craft. (Dkt. No. 55 at 9.) This argument assumes its own conclusion, brings
subjectivity into what should be an objective "reasonableness" standard, and has no limiting
principle. The Court thus rejects it.

       Plaintiff next relies on an email from claims adjuster Mark Froggitt who said that
"underwriters are/were aware & therefore it would have been the intent of the policy to cover the
assured[']s use of the navy's vessel(s), as if under a charter agreement." (Dkt. No. 32-1 at 2.)
What Mr. Froggitt thought is not relevant to what *Plaintiff* reasonably—not subjectively—would
have believed. Plaintiff's own declarations do not even establish that it in fact thought it was
covered under the Charterer's Endorsement. (*See generally* Dkt. Nos. 29–32.) Plaintiff points out
that Defendants' adjusters never "suggested that the loss was not covered," (Dkt. No. 32 at 2),
but that is not the sort of evidence from which a jury could find that Plaintiff reasonably believed
it was acting as a charterer of the Craft.

       On the other side of the scale, Plaintiff's disclosures to Defendants' underwriters during
negotiation of the Policy indicate that the intent of the Charterer's Endorsement was to cover a
separate UIC subsidiary's tugging and towing operations between the Puget Sound and Alaska—
not Plaintiff's services to the Navy in Hawaii. (*compare* Dkt. No. 30-2 at 3 (describing how

"Charterer's Liability shall be adjusted" and listing towing activity in the Pacific Northwest),

Dkt. No. 22-2 at 5 (suggesting that a UIC subsidiary other than Plaintiff offered chartering

services in the Arctic), *and* Dkt. No. 23-1 at 58 (final version of Charterer's Endorsement in the

Policy containing the same language), *with* Dkt. No. 22-2 at 4 (describing Plaintiff's operations

as piloting government-owned vessels in Hawaii, California, and Florida)). Thus, there is nothing

from which a jury could find that Plaintiff reasonably thought it would be covered as a charterer.

The Court thus SUSTAINS Defendants' second objection, OVERRULES Plaintiff's

objection on this point, and GRANTS summary judgment to Defendants that Plaintiff's loss was

not covered under the Charterer's Endorsement.

### D.      Coverage for Liability under Assumed or Incidental Contracts

Plaintiff argues that its losses are covered because it "assumed" liability under the Navy

Contract. (Dkt. No. 55 at 13.) In support of this, Plaintiff points to a standard federal

procurement clause incorporated into the Navy Contract called "Liability and Insurance" in

which Plaintiff agreed to be "[l]iable to the Government for loss or damage to

property . . . owned by the Government or for which the Government is liable." 48 C.F.R.

§ 252.247-7007(a)(1) (cited in Dkt. No. 31-4 at 10.)

The R&R disagrees, reasoning that this provision in the Navy Contract merely stated

Plaintiff's pre-existing liability "for damages arising from breach of its own contract" and thus

did not provide coverage. (Dkt. No. 49 at 17.) This was insufficient, the R&R explains, because

case law recognizes that the language "[l]iability assumed . . . under any contract" in an

insurance policy refers to a scenario where the insured takes on liability by agreeing to

indemnify or hold someone harmless; it does *not* include liability resulting from breach of a

contractual duty *other than* a promise to indemnify or hold harmless. *See, e.g.*, *Olympic, Inc. v.*

*Providence Wash. Ins. Co. of Alaska*, 648 P.2d 1008, 1011 (Alaska 1982) (finding tenant did not

"assume liability" for wrongful death resulting from fire by agreeing to obtain liability insurance

naming landlord as an insured). Defendants take this a step further, arguing that an insured party

cannot "assume liability" from another under a contract unless it is that latter party's liability to a third person. (Dkt. No. 52 at 11.) None of the cases Defendants cite require this, though, and all those cases either involved contractual duties other than agreeing, in advance, to pay for the results of an accident (i.e., indemnification), or did not involve explicit indemnification agreements at all. (*See* Dkt. No. 52 at 11 n.9 (citing cases).)

Here, Plaintiff agreed to assume liability "to the Government for loss or damage to property . . . owned by the Government." 48 C.F.R. § 252.247-7007. Defendants argue that Plaintiff had certain maintenance and repair duties independent of this particular provision (*see* Dkt. No. 52 at 9 (citing Dkt. No. 21-1 at 11–12, 18)), but the clauses imposing those duties speak to prophylactic measures, routine upkeep, and ordinary-course repairs, rather than who bears the risk of damages from an accident. They do not change the fact that Plaintiff expressly agreed to indemnify the Navy for damage to Government watercraft. It is true that Plaintiff would breach the Navy Contract had it not paid for the repairs to the Craft, but on the record here, that is because "in the case of indemnification or hold harmless agreements, assumption of another's liability constitutes performance of the contract." *Olympic, Inc.*, 648 P.2d at 1011. All other things being equal, because the Navy owns the Craft, it would have had to pay to fix it unless it sued Plaintiff for negligence and won. Instead, Plaintiff and the Navy prospectively allocated the risk of loss of the Craft to Plaintiff. That is an "assumption" of liability.

Accordingly, the Court SUSTAINS Plaintiff's objection and GRANTS summary judgment to Plaintiff that the loss was covered under this provision of the Policy.

## III.   CONCLUSION

For the foregoing reasons, the Court OVERRULES Defendants' first objection (Dkt. No. 50 at 2–4), SUSTAINS their second objection (*id.* at 5–8), OVERRULES Plaintiff's objection as to the Charterer's Endorsement (Dkt. No. 55 at 7–12), and SUSTAINS Plaintiff's objection as to "assumed" liability, (*id.* at 12–14). The Court MODIFIES the R&R to incorporate the analysis above and ADOPTS it as modified.

1    It is further ORDERED that Plaintiff's motion for summary judgment (Dkt. No. 28) is

2   GRANTED in part and DENIED in part; and Defendants' motion for summary judgment (Dkt.

3   No. 41) is GRANTED in part and DENIED in part.

4    DATED this 15th day of July 2022.

5

6

7

8   John C. Coughenour
    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26